UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

                                    Plaintiff,

        v.                                                      Action No. 3:09–CR–139

ERIC W. ANDERSON,

                                    Defendant.

MEMORANDUM OPINION

        THIS MATTER is before the Court on Defendant's Motion to Suppress (Docket No.

14), filed May 27, 2009.  Defendant seeks to suppress evidence seized as a result of a traffic

stop, search incident to arrest, and a subsequent search warrant.  For the reasons below, the

Court will DENY the Motion.

I.  BACKGROUND

        On January 15, 2009, Virginia Commonwealth University ("VCU") police met with

a confidential informant ("CI") to finalize delivery of marijuana from an individual known as

"Wes" in the area near VCU in the City of Richmond, Virginia.  During a phone call in the

presence of VCU police officers, "Wes" agreed to meet the CI at the Five Guys Burgers and

Fries located at 933 West Broad Street in the city, and deliver six ounces of marijuana in

exchange for $1,000.  Officers stationed themselves at the Five Guys.

        Other officers observed "Wes," later identified as Defendant, leave his residence at

301 Cedar Street, Richmond, Virginia a short time later.  As Defendant drove from the

1

residence, these officers observed that the center brake light on his car had burned out.

Defendant stopped at a residence, exited the car, and then returned to his vehicle.  Shortly

thereafter, the CI contacted Defendant once again to ascertain the reason for his delay in

arriving at rendezvous and arranged for a new location for the exchange.  Defendant

agreed to meet the CI at Ryland and Franklin Streets near VCU.  As Defendant drove

through an alley between Grace and Franklin streets from Ryland, Officer Fahrenbruch, a

VCU police officer, observed the burned out brake light on Defendant's vehicle and stopped

Defendant for a defective equipment violation.

Fahrenbruch spoke to Defendant, the driver, about the burned out light.  As she

spoke with him, she smelled alcohol emanating from the vehicle's interior.  She also noticed

that Defendant's eyes were bloodshot and glassy.  Defendant also seemed nervous.  At this,

Fahrenbruch asked him if he had been drinking.  Defendant stated that he had not.

Defendant's response notwithstanding, the officer asked him to step out of the car for a

sobriety test.  Before Defendant exited the car, Fahrenbruch viewed a large amount of

money in Defendant's lap.  The smell of alcohol persisted once Defendant exited the

vehicle.

When Defendant exited the vehicle, he left the driver's side door open and stood

next to the vehicle.  The officer asked Defendant if he possessed any weapons or

contraband.  He responded in the negative.  Despite Defendant's response, Fahrenbruch

informed him that she was going to pat him down for her own safety.  She did so.

Fahrenbruch felt a rectangular object in Defendant's front pants pocket.  She subsequently

2

looked inside the vehicle to ensure Defendant did not have access to any weapons there. When she looked into the car, the officer observed what appeared to be the slide of a handgun and part of a black holster placed beneath the driver's seat.  Fahrenbruch did not have to manipulate anything in the car in order to make these observations, although the gun and holster were not visible while Defendant was seated inside the vehicle.

After observing the gun and holster, Fahrenbruch removed the passenger from the vehicle, handcuffed Defendant, and seized the firearm.[1]  She then placed Defendant under arrest for possessing a concealed weapon.  As such, Fahrenbruch never issued a traffic summons for the equipment violation or had Defendant complete a field sobriety test.  The officer then searched the vehicle and recovered a backpack containing two plastic bags of what was later determined to be marijuana.[2]

Officer Fahrenbruch took Defendant and the passenger, later identified as his roommate, Feleti Fatusei, to VCU Police Headquarters to be processed.  There, both men verbally waived their <u>Miranda</u> rights.[3]  Fatusei revealed that Defendant also possessed marijuana and another firearm at the residence they shared.  Defendant advised officers that he sells marijuana to supplement his income because he does not have steady employment and that he smoked marijuana.  He also revealed that he obtained the weapon Fahrenbruch recovered in August or September 2008 from an unknown male for free.

---

[1]    Fahrenbruch later learned that the gun had been stolen.

[2]    According to Fahrenbruch, one of the officers familiar with Defendant had informed her that Defendant transported his drugs in such a bag.

[3]    <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 486 (1966).

Moreover, Defendant stated that he had additional marijuana at his residence.

Based on this information, officers obtained and executed a search warrant for Defendant's residence.  There, officers recovered $3,950, a passport, a digital scale, eight boxes of Remington 12 gauge ammunition, and one box of Turkey shot 12 gauge ammunition from a safe in Anderson 's bedroom.  From another unused room in the residence, officers found six additional bags of marijuana, smoking devices, ammunition, and additional firearms.

## II.  LEGAL STANDARD

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "Because an automobile stop is a seizure of a person, the stop must comply with the Fourth Amendment's requirement that it not be unreasonable under the circumstances.  As a result, such a stop must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct."  United States v. Wilson, 205 F.3d 720, 722-23 (4th Cir. 2000) (citing Whren v. United States, 517 U.S. 806, 809-10 (1996); United States v. Hassan El, 5 F.3d 726, 729 (4th Cir.1993)) (internal citations and quotation marks omitted).  With regard to this Motion, the Court's findings of fact will be reviewed for clear error, while its legal conclusions will be reviewed de novo.  See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992).

III.  DISCUSSION

Defendant primarily argues that Fahrenbruch's stop violates the Fourth Amendment because "all brake lights and fuses on the vehicle were operable," and, moreover, no justification existed for (1) Defendant's detention beyond the time required to "write the summons and check [Defendant's] license status" or (2) Fahrenbruch's order that Defendant exit the vehicle.  (See Def.'s Mem. Supp. Mot. Suppress 1, 3.)

The Government responds that Fahrenbruch had reasonable and articulable suspicion to stop the vehicle based upon the defective equipment; this justified the initial stop.  Moreover, the officer's subsequent observations, including the smell of alcohol and eventually seeing the slide of the gun in plain view, justified the sustained detention and subsequent arrest.

It is clear that "[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993) (citing United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990)).  Moreover, "this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." Id.  Further, the Supreme Court has rejected arguments "that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." United States v. Whren, 517 U.S. 806, 813 (1996); see also Ohio v. Robinette, 519 U.S. 33, 37 (1996); accord United States v. McDonald, 61 F.3d

5

248, 254 (4th Cir. 1995). Thus, the "stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions." Hassan El, 5 F.3d at 730.

It is also clear that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977). Moreover, for safety reasons, a police officer may justifiably search areas of a vehicle where readily-accessible weapons may be located—this includes a suspect's access after the stop has ended. See Michigan v. Long, 463 U.S. 1032, 1049-52 (1983); United States v. Holmes, 376 F.3d 270, 280-81 (4th Cir. 2004).

Since this stop occurred without the advance protection of a valid search warrant, the Government bears the burden of demonstrating the stop was justified. See, e.g., Chimel v. California, 395 U.S. 752, 762 (1969) ("Clearly, the general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking (an) exemption (from the requirement) to show the need for it.'") (quoting United States v. Jeffers, 342 U.S. 48, 51 (1951)). It has done so.

Based on Officer's Fahrenbruch's testimony—which the Court considers credible—and the controlling authority, Defendant's arguments carry little weight. Observing the non-functioning brake light gave Fahrenbruch the probable cause to stop the vehicle for defective equipment. This is so whether or not she had independent suspicions that the

vehicle contained contraband.  Hassan El, 5 F.3d at 730.  Thus, the Court finds the initial

stop permissible.

Moreover, the Court finds Fahrenbruch's order for Defendant to exit the vehicle

constitutional.  An officer may order an individual out of his car where unlawful activity has

occurred.  See id.  Her observations of the persisting smell of alcohol, Defendant's

bloodshot and glassy eyes, as well as his temperament, provided more than enough

justification for her request that he exit the vehicle to perform a field sobriety test.[4]

Moreover, Fahrenbruch's observations following Defendant's exit from the vehicle

lay within constitutional bounds.  Fahrenbruch justifiably looked into the vehicle to ensure

no weapons were readily accessible to Defendant.  See Long, 463 U.S. at 1049-52;

Holmes, 376 F.3d at 280-81.  This is especially so in light of her testimony that she had

information that Defendant regularly carried a weapon[5] and felt a rectangular object in his

front right pants pocket when performing the pat down.  During this brief inspection,

Defendant observed what appeared to be a holster and slide of a gun under the seat.

Defendant's argument to the contrary notwithstanding, this observation more than amply

provided the officer with the probable cause necessary to arrest Defendant for possession of

a concealed weapon.  See Va. Code Ann. § 18.2-308 (2009).

---

[4]    Defendant makes much of the fact that Fahrenbruch never  in fact field tested
Defendant.  In light of the officer's viewing the slide of the handgun, and his resulting arrest,
Defendant no longer posed a danger to public and no field test needed to be conducted.

[5]    Defendant raised no objection to this evidence, although in argument he referred to
this as "hearsay evidence."

Finally, Fahrenbruch conducted the search that revealed the drugs incident to Defendant's arrest.  In light of the arrest and the weapon already recovered, there was nothing unreasonable about this search based upon the controlling case law.  See Thornton v. United States, 541 U.S. 615, 623 ("Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment."); New York V. Belton, 453 U.S. 454, 460 (1981) ("[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.")

Accordingly, this Court finds that the search Fahrenbruch conducted comported with the Fourth Amendment and the applicable controlling case law interpreting it.  Thus, the evidence resulting therefrom need not be suppressed.

## IV.  CONCLUSION

For the foregoing reasons, as well as those stated from the bench, the Court will DENY Defendant's Motion to Suppress.

It will be SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this ___6th___ day of July 2009

8